IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR R. EIPPER, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2119 |
| | § | |
| JOHN ASHCROFT, Attorney General, | § | |
| Department of Justice, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Plaintiff, Arthur R. Eipper, Jr., sued the Attorney General after his former employer, the Bureau of Prisons, refused to hire him. Eipper claims discrimination on the basis of age, race, and national origin. Defendant moved for summary judgment on the basis that Eipper was not hired because he did not meet the eligibility requirements set out in the Bureau of Prison Guidelines. (Docket Entry No. 14). Eipper has responded, and defendant has replied. (Docket Entry Nos. 20, 22).

Based on a careful review of the pleadings, the motion and related filings, the record, and the applicable law, this court grants defendant's motion for summary judgment and, by separate order, enters final judgment. The reasons are set out below.

**I.     Background**

Eipper is Caucasian, non-Hispanic, and was 43 years old in 1999, when the challenged failure to hire occurred. Eipper had worked as a Correctional Officer at the Federal Correctional Institution at La Tuna, Texas beginning in May 1989. In 1996, Eipper left the Bureau of Prisons and began working for the Immigration and Naturalization Service. It is undisputed that Eipper did not satisfactorily complete the probationary period of his employment as an INS special agent. The INS informed Eipper that he would be terminated from his position. Eipper filed an EEO complaint challenging that job termination. His complaint was resolved by a settlement agreement, under which Eipper was shown to have resigned in October 1997. (Docket Entry No. 15, Ex. C, pp. 14-15).

In 1999, Eipper applied for the position of Correctional Officer at the newly- opened Federal Detention Center in Houston, Texas. Eipper was called for a preemployment interview, known in the agency as an "integrity interview." The integrity interview consists of a series of standardized questions. In response to the question asking whether he had been dismissed or resigned in lieu of termination in the past three years, Eipper answered in the affirmative. Eipper told the interviewer that in 1997, the INS had advised him that his job would be terminated because he had failed to complete the probationary period satisfactorily. Eipper explained that he had appealed the decision and in that settlement, the record was changed to reflect a resignation. (Docket Entry No. 1, p. 4). Despite these answers to the question, which Eipper repeated in writing, Eipper was permitted to proceed to the next stage of the selection process, a panel interview, which occurred on May 11, 1999. The Federal

Detention Center's Employee Services Manager (ESM), formerly known as a Human Resource Manager, Wendy Burton, told Eipper that although he had done well in the panel interview, he was not selected. Eipper filed an EEO complaint to challenge the decision. Eipper believed that he had superior experience and qualifications and that the make-up of the panel – two black males, one white female, and one Hispanic female – was a reason to suspect discrimination. In a hearing, the defendant explained its decision not to hire Eipper for a position as an FDC-Houston Correction Officer. The Bureau of Prisons "Guidelines of Acceptability" for job applicants do not permit employment of any individual who had been dismissed for cause, including "resignation in lieu of dismissal for cause" in the prior three years. In the administrative proceeding, Burton stated that Eipper's resignation from the INS was a resignation in lieu of dismissal for cause, making him ineligible for hire for three years. The administrative judge found no discrimination in the decision not to hire Eipper. (Docket Entry No., 15, Ex. D). Eipper then filed this suit.

In this suit, Eipper specifically challenges as pretextual the reason the defendant gave for the decision not to hire him. In his complaint, Eipper cited three major points for his allegation. First, his resignation was not "in lieu of termination," but was a "resignation following what initially was a termination." (Docket Entry No. 1, p. 6). Second, if Eipper had in fact not passed the integrity interview, he would not have been called back for the panel interview. Finally, in 2001, the FDC Houston adopted an affirmative action plan to further the goal of having a staff with a racial and ethnic profile matching the prison population – including increasing the number of Caucasian officers – evidencing intentional

discrimination.

In its motion for summary judgment, defendant has submitted the administrative record from the EEO proceeding. Defendant asserts that Burton properly concluded that Eipper's separation from the INS was a resignation in lieu of termination, which disqualified him from a position with defendant for three years. Defendant asserts that Burton decided to proceed with a panel interview because Eipper had prior service with the same agency and would be eligible for hire within a year, three years from his separation from the INS. Burton did not inform Eipper that he was ineligible, and instead had him proceed with a panel interview, because Eipper was familiar with the hiring procedure and knew that a panel interview was the next step. If Burton had told Eipper that he had not been selected before the panel interview, she would have revealed the "guidelines of the Federal Bureau of Prisons [that] are confidential." (Docket Entry No. 15, Ex. C, p. 52). Additionally, because Eipper had already been invited for a panel interview before it was determined that he was ineligible, and the panel was ready and willing to meet with him as well as a number of others, it was not a significant inconvenience.

Each of defendant's grounds for summary judgment, and Eipper's response, are examined below.

## II.     The Applicable Legal Standards

In order to overcome a motion for summary judgment on Title VII discrimination claims, a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973). A *prima facie* case is established once the plaintiff has proved that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was subjected to disparate treatment as compared to someone outside the protected class. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997). The *prima facie* case, once established, raises a presumption of discrimination, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for the challenged employment decision. *See Meineke v. H&R Block*, 66 F.3d 77, 83 (5th Cir. 1995) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248. 254, (1981)); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). "This burden on the employer is one only of production, not persuasion, involving no credibility assessments." *Russell*, 235 F.3d at 219; *see Bauer*, 169 F.3d at 966 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)) ("The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *'if believed by the trier of fact,'* would support a finding that unlawful discrimination was not the cause of the employment action."). If the defendant meets its burden, the presumption of discrimination created by the *prima facie* case disappears, and the plaintiff is left with the ultimate burden of proving discrimination. *Hicks*, 509 U.S. at

511-12. The plaintiff may meet its ultimate burden with evidence tending to show that the reason offered by the defendant is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

The plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation. *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 896-97 (5th Cir. 2003); *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 (5th Cir. 2001). An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *See Sandstad*, 309 F.3d at 899. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000); *Russell*, 235 F.3d at 223. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation. . . ." *Reeves*, 530 U.S. at 147-48. The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. *See Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 148); *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000). If the

plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate. *See West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 385 (5th Cir.2003); *Sandstad,* 309 F.3d at 894. The issue is whether the evidence, viewed in the light most favorable to the plaintiff, is sufficient to create a jury question regarding the discriminatory failure to hire claim.

**III.    Analysis**

Defendant does not dispute, for the purpose of the summary judgment motion, that Eipper has shown a *prima facie* case of discrimination. This court finds that defendant has met its burden of articulating a legitimate, nondiscriminatory reason for the decision not to hire Eipper for the Federal Detention Center Correctional Officer position. Defendant's proffered basis for refusing to hire Eipper was that he had resigned in lieu of dismissal from the INS within the past three years. Under the agency's employment Guidelines, this made Eipper ineligible for employment until the third anniversary from the resignation, or October 10, 2000. Eipper's integrity interview was on April 26, 1999, within the three-year period.

Eipper's first argument is that there was disputed evidence as to whether his resignation from the INS was "in lieu of termination" under the Guidelines. Eipper does not dispute that he had not satisfactorily completed his probationary employment period at the INS and that the INS had announced its intention to terminate Eipper's employment. Nor does Eipper dispute that as a result of a settlement, the record was changed to reflect that he had resigned in October 1997. Nor does Eipper dispute that at the integrity interview, he

affirmatively answered the question about a resignation in lieu of termination and explained that the INS had been ready to fire him until a settlement agreement allowed him to change the official record, to a resignation. Eipper asserts that because the INS's official record was changed as a result of the settlement agreement to show a resignation, he did not resign in lieu of termination, but rather agreed to a settlement in which the planned termination was changed to a resignation. Eipper points to the testimony of Pamela Worley, an assistant human resource manager at FCI La Tuna, Texas, where he had previously worked, to support his claim that there is both a distinction and a difference between such a resignation and one "in lieu of termination." A review of Worley's testimony and other relevant parts of the record does not support Eipper's contention.

Worley testified at the EEO hearing that she considered a "resignation in lieu of termination" to be "that an individual was issued a proposal to terminate, a letter of proposal to terminate and the person says, 'Well I will resign rather than being terminated.'" When asked to compare that with a situation in which someone is terminated and challenges it, resulting in a settlement in which the termination is changed to a resignation for personal reasons, Worley explained that a resignation for personal reasons could be for any number of reasons, as opposed to a resignation because there was an adverse action being processed. (Docket Entry No. 15, Ex. C, pp. 33-35). The examples of a resignation for personal reasons Worley gave were a "resignation for families relocating, changing jobs, or a desire to stay at home." (*Id*. at 36). Eipper does not dispute that he did not resign for such reasons. Rather, the settlement resolving his challenge to the proposed job termination permitted the

official form to show that he resigned. Worley gave an opinion that this would not be a "resignation in lieu of termination," but she qualified her opinion by stating that she would "want to get the whole story" and "get the backup paperwork after everything to voucher out that employer to see what the employer says," and that she was only interpreting the guidelines for herself and in any event would have to seek assistance for her own human resource manager. (*Id*. at 35-37).

Burton, who is a human resource manager, explained why she considered Eipper's resignation to be "in lieu of termination":

> Q: What do you understand a resignation in lieu of dismissal to be?
>
> A: I understand that to be they were going to fire someone and through whatever type of agreement existed the individual in question agreed instead of to be fired to be allowed to resign. It looks usually a lot better on somebody's personnel record, a resignation in lieu of a termination.
>
> Q: And how does that differ from a situation in which someone actually is fired, they challenge it and then there is a settlement entered into in which an SF-50 [form] showing a resignation for personal reasons?
>
> A: It differs because at least in Mr. Eipper's case he was the one that told us and, again, signed to the truthfulness of it that he resigned in lieu of termination. That – essentially that statement overrides the 50. We went with his statement.

(Docket Entry No. 15, Ex. C, pp. 56-57).

Worley's testimony does not raise a fact issue as to whether defendant's stated reason for refusing to hire Eipper was pretextual. When asked in the integrity interview if he had

been dismissed or resigned in lieu of termination in the last three years, Eipper answered affirmatively and explained the terms of the settlement that allowed him to do so. Eipper has failed to show any disputed facts supporting his claim that Burton did not actually believe that Eipper had resigned in lieu of termination, but instead used that as a pretext for an otherwise discriminatory action. *See Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Eipper's assertion that he did not resign in lieu of termination does not raise a fact issue that defendant's stated reason for refusing to hire him is pretextual.

Eipper also challenges the decision to allow him to proceed to a panel interview as evidence of pretext. He argues that the summary judgment evidence shows that if an individual fails the integrity interview, that individual is not allowed to proceed to the panel interview. Defendant responds by pointing to the explanation Burton gave of her reasons for allowing Eipper to proceed to the panel interview even after she concluded that he had failed the integrity interview. As defendant points out, Worley also testified that on some occasions – she identified ten times in ten or eleven years – applicants would be invited for panel interviews although they failed some part of the integrity interview. (Docket Entry No. 15, Ex. C, p. 32). Other witnesses who testified that they knew of no individual who had failed an integrity interview and continued to a panel interview also testified that they lacked any personnel experience. (*Id.* at 80-81, 91).

Eipper also asserts that Burton could have requested a waiver of the Guideline that made him ineligible for hire and did not explain her failure to do so. Contrary to Eipper's

assertion, Burton did explain that such exceptions required action by the Regional Director and has never been done at the Federal Detention Center in Houston. (Docket Entry No. 15, Ex. B-8, p. 5). Worley testified that a waiver for employment was reserved for positions that were hard to fill. (*Id.,* Ex. C, p. 31). There is no indication that Eipper was applying for such a position.

In sum, none of Eipper's arguments raises a disputed fact issue material to determining whether defendant's refusal to hire him because he was ineligible under the Guidelines was a pretext for discrimination.

**IV.   Conclusion**

Defendant's motion for summary judgment is granted. Final judgment will be entered by separate order.

SIGNED on June 1, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge